Okay, we'll turn to 24-347, United States v. Gomez. And I understand, Mr. Perez, you are going to be leading off and that you would like to reserve two minutes for rebuttal. When do you get here? Yes, sir. When do you get here? We'll wait. Thank you, Your Honor. May it please the Court, my name is Daniel Perez. I represent Anthony Gomez pursuant to the Criminal Justice Act. The District Court violated Anthony Gomez's right to be present at his own sentencing by failing to impose the search condition orally. For decades, this Court You have to help me. I'm looking at the record. The search conditions were in the PSR, right? The search condition that is challenged in this appeal was in the final PSR but not the draft PSR. And as we pointed out in our reply brief, the record is unclear as to whether Mr. Gomez reviewed the draft PSR or the final PSR. To the extent that you can infer something from the record, it does appear that he would have reviewed the draft PSR.  If you look at the chronology, Judge Nardini, the PSR interview at paragraph 61 was September 25th, 2023. Draft PSR forwarded to counsel October 12th, 2023, and the draft PSR filed October 16th. The government did not file an objection. The defense objection, we don't know, unfortunately, when that was filed. Were you the defense? When did the defense get the final PSR? Unfortunately, when did the defense get the final PSR? November 13th, 2023. And unfortunately, the final PSR says that the defense objections were filed in June of 2023, which is not possible. You did not represent Mr. Gomez at this point. I did not. So you're picking this up from the record. Which is the best that I can do. So when did the district court ask the defendant, did you review the PSR? I don't believe that the district court affixed a date to it. No, no, no. When did the district court talk to the defendant? That was at the sentencing hearing. At sentencing. That was January 25th, 2024. Okay. So that's the day of the canvas. Yes. And by that point, the final PSR had come out. Of course. Of course. However. You're hypothesizing that somehow when the court is referring to the PSR and saying you reviewed this, somehow the defense was talking about a preliminary version of the PSR? You don't think the court was talking about the preliminary previous draft? The court didn't specify whether Mr. Gomez had. Is that usually what happens? I mean, it's not my experience that when you get to sentencing and everyone is talking about the PSR, what everyone is really thinking about is, oh, I'm talking about that previous draft that's not been updated. Everybody knows you're talking about the PSR that's enforced at the day of the sentencing. I mean, the defense lawyer would have understood that. If I may try a different explanation. Yeah. The defense lawyer gets the draft PSR. There are then objections to the PSR. Right. Typically, you meet with your clients and review the draft PSR in order to fashion the objections to the PSR. And also typically you meet with your client in the morning in the lockup and you say, hey, this is what's going to go on. Right. So, I mean, if you start talking about typical, I guess I'm asking you, what is leading you to believe that when they're in the sentencing hearing before the judge and the judge is saying, did you look at the PSR, everyone is saying yes, that they're somehow talking about something earlier, not the final, and that the defense lawyer doesn't make a peep? I'm not saying that. I can't say that because the record is unclear. What I am saying is that there are multiple, there are two versions of the PSR. There almost always are. I understand, but that's what. Basically, what you have to be saying is that where the district court refers to the PSR and what is adequate on that is something that in our circuit at the moment is a mess, because we have an opinion in Rosado or something that says one thing. We have a summary order in Bartley which says the opposite. Despite that opinion, we have Majorano, which is somewhere uncertain, and that at least until that is settled, whether it was one thing or the other that the lawyer, that the court was referring to, which we might with Judge Dardini assume that it was the final one, but that that in this situation is too much of a mess for us to say. That's basically your argument. Judge Calabresi, I would submit to Your Honor, to this panel, that I quite agree that it is a mess, that there are opinions of this court that very, there are opinions written by members of this panel that very clearly say simply referring to the PSR is not sufficient. There are also opinions of this panel very recently that suggest that referring to the PSR is sufficient. If it is expressed about it. Sotomayor, what did Judge, what is your contention that Judge Furman did that he shouldn't have done? He should, because this search condition is neither standard, mandatory, recommended, can be located in 5D1.3, is not simply an administrative condition. It has to be orally read. That's the law. If there's a condition that says you're not allowed to possess someone else's identification, you have to orally tell that to the defendant. And there's good reasons for that, because you're giving. There are good reasons for that if the defendant is pro se, but that's the lawyer's job. With due respect, Judge Parker, that's the court's job under Rule 43A. That's an argument anyway. But Judge Furman says in addition to standard condition of superiors release, which are set forth in page 33 and 34 of the pre-sentence report. Right. Were those the ones that hit the judgment? Oh, clearly those are the final, that's the final PSR. And those were not in the draft. And those are the ones that hit the judgment. I'm sorry. You both asked questions. No, go ahead. Those are the ones that were referenced in the judgment of conviction. That's correct. That's correct. I'll even concede for the purposes of today's argument that Judge Furman was referring to the final PSR. He must have been PSR. Hang on. Were they in page 32 of the draft PSR? No. They were not. Okay. So when he says I'm imposing the conditions at page 32 of the PSR. Final. The only thing anyone could have understood that to mean was the final PSR. Yes. Because that's the only place it was. And that is something that is, as a matter of course, provided to the defendant and his counsel, and is a matter of the court specifically said, have you reviewed the PSR? He said yes. At that point, if there had been any lack of clarity, the defense could have stood up and said, wait, wait, page 32. Your Honor, I'm looking at page 32. There are no conditions here. Oh, wait, I think I must be looking at the draft. But, Your Honor. But there was no objection. That's precisely the point, is the lack of clarity. What's the lack of clarity? I'm looking at the transcript. Judge Furman says you must meet the special conditions that are set forth on page 34, including the search condition. That's three words out of 114. The judge confirmed that trial counsel had gone over the document with his client. Yes. That's the lawyer's job. Where is the lack of clarity? Judge, the lack of clarity is that what appears in the record, the recommendation in the final PSR is probation's recommendation. It does not become part of the sentence until the judge says, this is now part of the  And because it's not in 5A1.3a, c, or d, it has to be already read. No, I said what's the lack of clarity when he says page 34? Judge, I've even asked you a different question. I'm interested in the answer. Let's do it this way. Do you have the blue brief in front of you? I do. All right. Let's look here at page 34. Do you see that second paragraph? If the district court was going to read one of the 20 texts. Is there any lack of clarity about what I was just asking you to read? Were you confused? No. I have a legal education, Your Honor. And so does the defense lawyer who was at the sentencing. Hang on. You're suggesting that when I asked you to turn to that page of a specified document, it was clear you were not confused. You're suggesting that when Judge Furman told everybody in the courtroom, including the defense lawyer, I'm imposing the mandatory conditions on page 32. I'm also imposing the standard conditions on pages 33 and 34. I'm now saying you must meet the special conditions on 34. That that moment, confusion reigned. I mean, I get that's your argument, but I didn't say how that's possible. I never took the position that confusion reigned. Okay. May I respond? Am I overstating it? Are you suggesting there was any confusion at all?  Yeah, no, but answer my question when you respond. Are you suggesting there was somehow any confusion as to what he was imposing there? Yes. Because the person being sentenced is not the defense lawyer. The person being sentenced is a guy who repeated third grade, smokes marijuana 15 times a day, dropped out of high school, and didn't even finish his GED. So you're saying it's the assistant counsel. That's the person who needs to be clear as to the terms of the sentence. I get it. So now how do you reconcile it? I can't remember the name of our case quite recently that said that a defense lawyer, on behalf of a client, can waive the reading, the oral reading. You agree we've said that? Lewis. Yeah, Lewis. There you go. No problem. So what do you do? Oh, then if Judge Furman had said to the defense lawyer and Mr. Gomez, have you reviewed the special conditions in the PSR, I don't have an argument. Or if the judge had said, do you waive the reading of the special conditions? And defense lawyer says it. So I guess what I'm asking you is how do you logically reconcile your argument, which is, look, you can't bank on the defense lawyer here. The words are intended for consumption by the ears of the defendant. Yes, Your Honor. How do you reconcile that with our holding in Lewis that the defense lawyer can stand up and say we waived it? Because then if your logic holds, it doesn't matter what the defense lawyer. Defense lawyer can't say, don't say it out loud, because now nothing is going into the ears of the defendant, who you just said is poorly educated and doesn't have an understanding. Okay. So tell me how you reconcile the logic of your argument with the logic of Lewis. I can reconcile it by analogy. Defendant appears for an arraignment on an indictment. Do you want me to read the indictment? No. Okay. He's still, the lawyer says no, not necessary. Right. That's okay. That's fine. Even more so. So how do you reconcile your argument with that longstanding rule that a defense lawyer can stand up and be the one to waive the reading of the indictment? Right. And our rule in Lewis that a lawyer can waive the reading of the conditions of special release with your argument that no, the defendant has to be the one to hear the words. I think, Your Honor, is overstating my position. My position is not that Lewis was wrongly decided. It's not the way I would have decided. I'm not. I'm saying how do you reconcile the logic of your position with the logic of Lewis? Well, very simply, because the defendant is standing next to the lawyer, and the lawyer is now taking affirmatively responsibility for, yes, I have reviewed the special condition. That does not appear anywhere in the sentencing guidelines. I reviewed that language with the defendant. And, therefore, I think you're saying that while the lawyer may say I waive, the lawyer may not, for the client, take the place and say that this is sufficiently clear that you have it. But it's different in our cases to say I waive, which is a specific thing that the client can understand and we have said is enough, and what the lawyer did, you say, which is not object to something which could have been A but might have been B, and that we can all assume the lawyer understood was A, but the client may have thought was B. Yes, Your Honor. And that's different from waiver. Yes, Your Honor. And I go back to an opinion from 2002 by a member of this panel that explained why this is all necessary, because you have a chance to clarify it in that moment. You're talking about Thomas. Thomas. Your reading of the record and mine differ. So what, according to the transcript, is what happened before Judge Furman. Judge Furman says, Mr. Morvillo, have you read the pre-sentence report? And this is at sentencing, so it's a final pre-sentence report. Mr. Morvillo says, yes. Court asks, have you discussed it with Mr. Gomez? Counsel says, I have. Then Mr. Gomez, did you review the pre-sentence report? Yes, Your Honor. And did you discuss it with your lawyers? Yes, Your Honor. Did you have enough time to do that, to go over the report with them and to discuss anything that you would wish to bring to my attention in connection with sentencing? Did you have enough time? Yes, Your Honor. But that is not sufficient. If it were, a defendant would leave his sentencing without the requisite certainty as to which portions of the PSR's proposed conditions were imposed and left guessing until he obtained a copy of the subsequent written judgment. That's Your Honor's opinion in Rosado in 2024. Can you remind me, what's the date of the final PSR? You went through all these dates. I'm sorry. I think it's November 13th. November 13th. So I guess I will just also go back to the transcript of the sentencing hearing, which is on A90, where the judge lists the various documents that he's reviewed in preparation, and the only pre-sentence report he mentions is the pre-sentence report dated November 13th, 2023. Fair enough. That's the final one? Yes, that is the final one. Okay. And you're suggesting that it is possible that even though the court said I've reviewed the final one, and then he proceeds to ask the defense whether he's read the pre-sentence report and discussed it with Mr. Gomez, that it is possible that Mr. Morvillo and the defendant were actually thinking about a different one than the one the court referenced the page earlier? Yes, and it's important. I'll just reiterate what I said in my brief. No, I think we understand you. I think you've laid it out clearly. We have kept you up a long time, and we appreciate it. I so enjoy it, though. Thank you. We do, too, and we very much appreciate your engagement. Why don't we hear from counsel for the government on this? Good morning. Good morning. May it please the court. Chelsea Sism for the United States. I represented the government in this case in the District Court below. There was no plain error in the oral pronouncement of the search condition. This court's precedent has made expressly clear that the express incorporation by reference of the PSR is sufficient oral pronouncement. No, we haven't made that clear. We have Rosado, which says it's not enough. We have cases that say it does. We have a summary order after which says that it is. But the one thing you can't say is that what kind of reference has been made is clear. I hope it will soon be clear, and it may well be clear in the way you say, but please don't come and tell me that something I've been struggling with ever since this case came in is clear. Thank you, Your Honor. I think Rosado is very different than the current case. In Rosado, Judge Rakoff did not incorporate the special conditions of supervised release from the PSR. He read several specific conditions in some amount of detail without referencing a page number and without talking about the PSR during that colloquy. Then, in the judgment, the special conditions appeared differently than he set them at sentencing. They appeared like they were in the PSR. So this is a case, if I can characterize it, tell me if this is correct, that Rosado was a case where the court orally paraphrased what would eventually be entered as the conditions of supervised release and that there was arguably a difference between what he orally pronounced and what was then put in a written judgment. Is that correct? That is correct, Your Honor. And added ones that had not been pronounced. That is also correct. Is this, I guess, to the extent we're talking about the standard of review, we have decided in our datas that this precise situation is governed by plain error review, right? Yes, that's correct, Your Honor. And the other thing that's different in Rosado is in paraphrasing those conditions of the PSR, he does not reference the PSR. Unlike Judge Furman, who one could say paraphrased the search condition, but specifically pointed the defendant and his lawyer to page 34 of the PSR. And Judge Furman was the district judge in our datas, as I recall, right? That is correct, Your Honor. And he was following precisely the same protocol in this case as he followed in our datas, right? That is right. What about the argument that they are making that to the client it would not have been clear which of the two PSRs that he was referring to? Now, he thought he was referring to the final one, but he may have been, in the eyes of the people who heard it, referring to the earlier one, and that the philosophy of Rosado that you must know what you're doing, it seems to me a bit dramatic, that philosophy, but let's take it as being there, that that was not met because of this confusion. There is no page 34 of the draft PSR, and the document would have been in front of the defendant at sentencing. So when the court referred to page 34 of the PSR... You say the document would have been, that's something written. That's not something spoken. Yes, that's correct. And we made this perhaps absurd notion that spoken is all different. The court's precedent says that the condition has to be orally pronounced at sentencing. It is our position that Judge Furman's reference to the PSR and the specific page number and the specific condition that he is referring to is oral pronouncement. So you're saying that if the written was before the client, or at least the lawyer, and there is reference orally to that, that is enough. That is correct, Your Honor. That is oral pronouncement. That is correct, and that is exactly what this court just held in Robinson a few weeks ago. Yeah. Unless the court has any further questions, the government will rest on its brief. No. Thank you. Thank you very much. Mr. Pears, we're delighted to see you again. Two more minutes. Well, let me ask you this. You've heard what she just said. I did, Your Honor. Now, why is that not enough to be oral pronouncement under our cases, under anything that is uncertain? With respect, this Court's cases are difficult to harmonize. They're difficult to follow. They're difficult to apply, and I respectfully submit that that's part of the problem here, is that different panels have reached different conclusions regarding more or less the same facts. It is not reasonable for a defendant, I'll use Mr. Gomez as an example, to be expected to review a PSR or special conditions of supervised release as he is being sentenced by a district judge in a courtroom. That's not reasonable. It's 114 words. What do you do with the statement beforehand that Mr. Morvillo, who's a very experienced lawyer, says he reviewed it? Yes, but, Your Honor. So you're saying he didn't or that he did it perhaps superficially? I guess that's what I'm trying to go to. Of course we don't expect a defendant or anyone to say, wait a minute, let me read this PSR now. Gosh, we're in the middle of a hearing. But that's why a district court asks a lawyer, did you review it in advance? And we expect, under the Sixth Amendment, a competent review. I mean, I would imagine when you or I assume you handled cases in the district court. I did. And you do sit down, I would assume, and carefully review anything that you think is important with your client. Do you have any reason to believe that Mr. Morvillo did not do that? That's not in the record. That's not in the record. I ask you, do you have any reason to believe he did not do it? I do not. I do not. Looking at the record as it stands, in what way do you think Mr. Morvillo, in his representation of Mr. Gomez in connection with the sentencing, was deficient? Oh, the deficiency was not by Mr. Morvillo. The deficiency was by the judge, by not simply reading the 104-word or 114-word condition. And if that had happened, then we're not here having this discussion. Well, do you think Mr. Morvillo went over that? Do you have any doubt that Mr. Morvillo went over that? Your Honor, I don't want to speculate. I will answer Your Honor's question only by reminding Your Honor that, number one, it's an 11,000-plus word document, that final PSR. And number two, as we pointed out in our brief, the focus of everybody, including the government, was how much time this guy was going to get. It's always true. But if that were the case, then we would always assume that lawyers didn't really review the unimportant parts. And we don't have that presumption, right? Judge Furman didn't say, did you read what I think are the important parts of the PSR? I mean, he said, did you review? It's not necessary to assume, Your Honor. We've had a lengthy argument on this. We will take the case under advisement and let us just say that we very much appreciate it. Thank you. Very lively arguments, and those are extremely helpful to the court. So we appreciate that on both sides. Thank you both.